Rickey Lee DILLARD, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 50143.

Missouri Court of Appeals,
Western District.

Aug. 13, 1996.

Rosemary E. Percival, Assistant Appellate
Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Fernando Bermudez, Assistant Attorney General, Jefferson City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Mr. Dillard was arrested on February 15, 1994 and charged by information in Boone County on April 27, 1994 with three counts of passing bad checks. Following a jury trial on August 11, 1994, Mr. Dillard was convicted on all three counts. He filed a post-conviction motion under Rule 29.15, in which he alleged his right to a speedy trial under the Sixth Amendment to the United States Constitution was violated because of the delays in arresting and trying him. In support, he alleges that he became an accused and his right to speedy trial began to run on June 15, 1992, twenty months before his arrest, when the Boone County prosecutor first filed a complaint against him in the form of an affidavit. He also alleges a violation of his due process rights under the Fifth Amendment to the United States Constitution due to the pre-arrest delay, and further that the State lost jurisdiction to try him because of undue delay following his request for disposition of charges against him in accordance with RSMo Section 217.450 *et seq.*

We affirm the denial of Mr. Dillard's post-conviction motion, finding that his Sixth Amendment right to a speedy trial was not triggered until his arrest and that the six-month delay between arrest and trial was not presumptively prejudicial and did not constitute a Sixth Amendment violation. Further, any pre-arrest delay was not shown to be both prejudicial and intentional and thus did not violate Mr. Dillard's Fifth Amendment due process rights. Finally, Mr. Dillard did not have a statutory right to a speedy trial because he did not make a proper demand for speedy disposition in accordance with the procedural requirements of the statute and the interstate detainer act was not applicable.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

On April 11, 1992 Mr. Dillard passed three bad checks at Gerbes supermarkets in Co-lumbia, Missouri. These checks were drawn on an account which had been opened by Mr. Dillard for a one-month period in March 1991. The account was emptied almost immediately and was closed by the bank almost one year prior to the time Mr. Dillard tried to cash the checks written on the account.

On June 8, 1992 Mr. Dillard was arrested in Sedgwick County, Kansas on outstanding warrants from Texas, Colorado, Arkansas, and Carthage and Camdenton in Missouri. It appears from the record most if not all of these warrants also involved forgery or bad checks. In any event, on June 11, 1992, Mr. Dillard waived extradition to Camden County and was arrested there for forgery.

On June 15, 1992, Mr. Dillard was charged in Boone County, Missouri by complaint, in the form of a sworn affidavit, with seven felony counts of check forgery. The court set a $10,500 bond for Mr. Dillard's release should he be arrested. On or about the date the affidavit and complaint were filed, a Boone County police officer investigating the alleged forgeries requested that Camden County place a "hold" on Mr. Dillard. It appears that this request was not acted upon, however, nor was it made a part of Mr. Dillard's record in Camden County. To the contrary, on July 17, 1992 Mr. Dillard was sentenced on the Camden County charges, and he began serving a three-year term on those charges in the Missouri Department of Corrections beginning July 20, 1992. While in the Department he was never placed under a detainer or other "hold" from Boone County.

During 1992 and 1993, while in the custody of the Missouri Department of Corrections, Mr. Dillard made several inquiries regarding outstanding charges and detainers against him. He learned of pending charges against him in Callaway and Scott Counties in Missouri, as well as in Illinois and Texas. Mr. Dillard invoked his right to a speedy disposition of each such charge. For instance, Mr. Dillard learned that Callaway County had lodged a detainer against him in connection with charges of passing two bad checks, numbered 459 and 464, drawn on the closed account mentioned above. In accordance

with the procedures set out in Section 217.450 *et seq.*, he served the Callaway County prosecutor and court with a request for a speedy disposition of these charges. The Callaway County charges were then dismissed.

The Illinois charges similarly were dismissed after Mr. Dillard requested a speedy trial. An agreement was reached as to the Scott County, Missouri charges under which Mr. Dillard paid restitution and received probation. Finally, Mr. Dillard served six months in Texas as a result of a probation revocation there. He was paroled by Missouri and Texas and returned to his home in Arkansas on January 21, 1994.

On February 15, 1994, Mr. Dillard was arrested in Arkansas on the Boone County charges. On April 25, 1994 a preliminary hearing was held. On April 27, 1994, the Boone County prosecutor filed an information under the same case number as the initial complaint which had been filed in June 1992 but on which no further action had been taken. The information, however, did not charge Mr. Dillard with any of the seven counts of check forgery as set forth in the original complaint. Instead, the information alleged three felony counts of passing bad checks written on a closed account. The information was amended three times, but the amendments simply went to issues such as the dates of the offense; they did not change the substance of the three counts.

Defendant alleges that two of the counts of the information involved two of the checks as to which prosecution had previously been dismissed in the Callaway County case, noting that the amounts of two of the checks were the same in both cases. The record refutes this allegation, however. The Callaway County case involved checks numbers 459 and 464 on the closed account discussed above. The 1992 Boone County Complaint alleged forgery of checks numbers 456, 460, 465, 467, 468, 469 and 481. The 1994 amended affidavit and information deleted the allegations of forgery but alleged in three counts that by passing checks 465, 467 and 468, Mr.

Dillard violated Section 570.120. In sum, the checks involved in the Boone County prosecution were, at all times, different than the checks involved in the Callaway County prosecution, although all were apparently written on the same account within a 2 or 3 day period in 1992.

Mr. Dillard says that he was not aware of the Boone County charges until his arrest in February 1994. He was not arraigned on those charges until May 2, 1994. Mr. Dillard filed a motion to dismiss on the basis of the State's delay on May 10, 1994.[1] The record discloses no earlier request for dismissal specifically on speedy trial grounds. However, Mr. Dillard did oppose each of the State's five requests for continuance of the preliminary hearing in March and April 1994.

A jury trial was held on August 11, 1994. Mr. Dillard presented no evidence. He was convicted on three counts of passing bad checks in violation of Section 570.120, RSMo 1986. He received concurrent four-year sentences on each count. Mr. Dillard filed a post-conviction motion on the ground that the trial court lost jurisdiction over the charges because of the delay in bringing him to trial. He claimed that the delay was prejudicial because he lost contact with an allegedly beneficial witness, Ms. Thompson, during the delay. The record does not disclose when or why he lost contact with the witness, what the witness' testimony may have been, whether such testimony would have been essential to an acquittal or merely cumulative, or how such testimony would have affected the outcome of Mr. Dillard's trial.

Mr. Dillard also claimed that the delay eliminated any opportunity for the sentencing judge to make his sentence run concurrently with a prior sentence which had already been fully served by the time of trial. The post-conviction judge, who was the same judge that heard the trial and issued the sentence, rejected this contention implicitly by finding that no prejudice occurred. He attributed Boone County's delay in arresting Mr. Dillard to the State's negligence, found no constitutional or statutory speedy trial

---

1. The post-conviction motion court found that Mr. Dillard did not file a motion to dismiss until June 6, 1994. This is incorrect. The record clearly establishes that a motion to dismiss on speedy trial grounds was filed on May 10, 1994 and the State acknowledges this fact.

violations, and denied the post-conviction motion. This appeal followed.

## II. THE SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL DOES NOT BEGIN TO RUN UNTIL THE DEFENDANT IS ARRESTED OR AN *INFORMATION OR INDICTMENT IS FILED*

Mr. Dillard's first claim on appeal is that his right to a speedy trial under the Sixth Amendment to the United States Constitution was violated.[2] The Sixth Amendment says that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.  . . . " The first issue we must resolve is when Mr. Dillard's right to speedy trial attached.

To so determine, we look to *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In that case, the Supreme Court held that the Sixth Amendment right to a speedy trial is "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of the accused to defend himself." *Id.* 404 U.S. at 320, 92 S.Ct. at 463. The Court held that these concerns are adequately protected by making the right to speedy trial attach with the filing of "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Id.* At this point, the defendant has become an "accused," and hence is entitled to Sixth Amendment protection. The Court specifically held, however, that "we decline to extend the reach of the amendment to the period prior to arrest." *Id.*, 404 U.S. at 321, 92 S.Ct. at 463–64.

Under *Marion* and its progeny, we must next determine when Mr. Dillard first became an accused. Mr. Dillard claims that he became an "accused" and his right to a speedy trial attached with the filing of the initial Boone County affidavit and complaint in June 1992. He alleges that the 26–month delay from that date until the time of trial in August 1994 was unduly lengthy and violated his right to a fair trial.

The State maintains that the speedy trial "clock" did not begin to run upon the filing of the affidavit and complaint in June 1992. It argues that the clock does not begin to tick until the earlier of an arrest or the filing of a formal indictment or information. Mr. Dillard was not arrested until February 1994. The information was filed in April 1994. He was arraigned in May 1994 and tried in August 1994. As he was thus brought to trial within six months after his arrest and within four months of the filing of the information, the State alleges that Mr. Dillard's right to speedy trial was not violated.

We agree with the State's position on this issue. Missouri has consistently held that the right to a speedy trial does "not apply to pending complaints which represent only a possibility that a criminal indictment or information will be filed." *State v. York*, 511 S.W.2d 758, 761 (Mo.1974) (three-year delay from time of felony complaint until time of trial did not violate right to speedy trial because trial was held within a few days of the information). As further stated in *State v. Black*, 587 S.W.2d 865 (Mo.App.1979):

> Being merely an application, which can be refused for constitutional or statutory noncompliance, the complaint itself places no actual restraints on the putative defendant nor does its filing require him to begin to protect his interests; thus, although the complaint may be the first step in a criminal prosecution, . . . the complaint does not "initiate a criminal prosecution" and it does not make the putative defendant an "accused" as those terms are defined in *Marion* and *Dillingham [v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975)], for the complaint itself does not

---

2. Mr. Dillard's direct and post-conviction motion appeals were consolidated in this Court. However, he has chosen not to brief any issues on direct appeal, and instead raises the issues only as errors in denial of his post-conviction motion. The State suggests that he should have raised his due process, Sixth Amendment and jurisdictional  ·

claims on direct appeal. However, it then goes on to address the merits of those claims. In light of this procedural situation, we will assume for purposes of this opinion that the issues raised were· proper for resolution on post-conviction motion, although they also could have been raised on direct appeal, and reach their merits.

initiate any of the financial, social or psychological harm protected against by the right to a speedy trial.

*Id.* at 873.[3]

■ Mr. Dillard attaches significance to the fact that at the time the complaint was filed, a $10,500 bond was set and a "hold" was requested for Mr. Dillard. He asserts that these circumstances are tantamount to formal accusation. Mr. Dillard has not referred us to any case which supports the proposition that the mere setting of a bond or the mere request for a "hold," in the absence of formal charges or actual restraint, is sufficient to trigger the Sixth Amendment. We do not believe these facts, by themselves, trigger the Sixth Amendment right to a speedy trial. This is particularly true when we consider that two of the key policies supporting the speedy trial guarantee—minimization of lengthy incarceration prior to trial and reduction of the disruption and stress caused by arrest and unresolved criminal charges—are not implicated where, as here, no formal information or indictment is filed and the defendant is not being held or restrained of his liberty.

■ We thus find that the Sixth Amendment right to speedy trial attached upon Mr. Dillard's arrest on February 15, 1994. The next issue we must determine is whether the delay of not quite six months from this date until Mr. Dillard's trial on August 11, 1994, violated his right to a speedy trial. This determination is governed by the rules set out in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *Barker* set out a four-factor balancing test to be used to determine whether a defendant's speedy trial right has been violated. The first factor requires inquiry into the length of the delay between the time the defendant became an accused and the time of trial. *Barker* held that "the length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

If, but only if, the length of the delay is found to be presumptively prejudicial, then the court must also inquire into (1) the reason for the delay; (2) the accused's assertion of the right to a speedy trial; and (3) the prejudice to the accused caused by the delay. The final factor is the most important one in determining whether a presumptively prejudicial delay has violated the accused's Sixth Amendment rights. *Id.*

■ Later decisions in Missouri and elsewhere have determined that a delay of less than sixth months is not presumptively prejudicial. In a case involving this minimal level of delay a speedy trial claim should be rejected without further inquiry into the other *Barker* factors. By contrast, a delay of over eight months is usually considered presumptively prejudicial, at least in a case not involving unusually complex issues. *See State v. Strong*, 484 S.W.2d 657, 660 (Mo. 1972) (five-month delay does not violate constitutional guarantee of speedy trial); *State v. Clark*, 723 S.W.2d 17, 21 (Mo.App.1986) (four-month delay does not violate Sixth Amendment); *State v. Thomas*, 625 S.W.2d 115, 125 (Mo.1981) (four-month delay is not presumptively prejudicial); *State v. Holmes*, 643 S.W.2d 282, 287 (Mo.App.1982) (adopting eight-month standard). *See also Doggett v. United States*, 505 U.S. 647, 656–57, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1992) (stating that a delay becomes presumptively prejudicial as it approaches one year); *State v. Pilkerton*, 561 S.W.2d 744, 746 (Mo.App. 1978) (eleven-month delay not inordinate on facts of case).

Here, the delay from arrest to trial was just less than six months. As a delay of this length is not presumptively prejudicial, no further inquiry need be made in order to determine that the delay did not violate Mr. Dillard's Sixth Amendment right to a speedy trial.

---

**3.** *See also State v. Turley*, 442 S.W.2d 75, 79 (Mo. banc 1969) (noting distinction between prosecutions commenced by indictment or information and proceedings commenced by criminal complaint); *State v. Caffey*, 438 S.W.2d 167, 171 (Mo. banc 1969); *Moton v. State*, 772 S.W.2d 689, 691 (Mo.App.1989) (explaining that a complaint does not constitute a criminal charge but is merely the first step in initiating a felony proceeding); *State v. Holmes*, 643 S.W.2d 282, 285 (Mo.App.1982); *Skelton v. State*, 578 S.W.2d 323, 325 (Mo.App. 1979).

### III. THE PRE–ARREST DELAY DID NOT VIOLATE MR. DILLARD'S FIFTH *AMENDMENT DUE PROCESS RIGHTS*

Mr. Dillard argues that, even if the twenty-month delay from the filing of the complaint in June 1992 until his arrest in February 1994 is not considered in determining whether there was a violation of his Sixth Amendment right to a speedy trial, such pre-arrest delay did violate his Fifth Amendment due process rights and that the conviction should be vacated on that basis.

■ Mr. Dillard is correct that the due process clause of the Fifth Amendment protects him against undue pre-arrest or pre-indictment delay. *United States v. Marion,* 404 U.S. at 324–25, 92 S.Ct. at 465–66. Whether a pre-arrest delay is undue is not determined by application of the test set out in *Barker v. Wingo, supra,* however. In order to show a Fifth Amendment due process violation the defendant must show that the delay "caused substantial prejudice to [defendant's] right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Marion,* 404 U.S. at 324, 92 S.Ct. at 465.

■ Mr. Dillard claims that the delay in this case was prejudicial in that he lost track of a potential defense witness, Ms. Thompson, during the 20 months between complaint and arrest. This claim is too speculative to constitute the "substantial prejudice" which must be shown to demonstrate a violation of defendant's right to a fair trial. The cases have made clear that "the prejudice shown must be more than the 'real possibility of prejudice inherent in any extended delay; that memories will become inaccessible, and evidence will be lost.' ... A defendant must do more than speculate; he must indicate the nature of possible evidence which could be adduced." *State v. Clark,* 859 S.W.2d 782, 786 (Mo.App.1993). *See also Marion,* 404 U.S. at 325, 92 S.Ct. at 466.

*Clark* held that the mere claim that witnesses were unavailable did not meet this standard. That is all that Mr. Dillard has shown here. The record does not even disclose what Ms. Thompson's testimony would

have been or how it would have been beneficial to the defense, nor did defendant show that she would have been willing to testify if trial had occurred more quickly. Accordingly, the alleged loss of Ms. Thompson's testimony is not sufficient evidence of substantial prejudice to justify dismissal. *See State v. Robinson,* 696 S.W.2d 826, 831 (Mo.App. 1985); *State v. Franks,* 793 S.W.2d 543, 546 (Mo.App.1990); *State v. Clark,* 859 S.W.2d at 786.

■ Mr. Dillard also asserts that due to the delay he lost any opportunity to have his Boone County sentence ordered to be served concurrently with his Camden County sentence, the term of which had already expired by the time of his arrest on the Boone County charges. One Missouri case has suggested that the missed opportunity for concurrent sentencing can be an element of prejudice, at least in the context of a *Sixth* Amendment claim. *State v. Holmes,* 643 S.W.2d 282, 287 (Mo.App.1982). *See also Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969). Various courts have expressed doubt, however, that the loss of possible sentencing options would constitute the *substantial actual prejudice* to the defendant's right to a *fair trial* needed to support a due process claim under the *Fifth* Amendment. *See United States v. Ricketson,* 498 F.2d 367, 370–71 (7th Cir. 1974); *United States v. Valentine,* 783 F.2d 1413, 1416–17 (9th Cir.1986) (possible deprivation of concurrent sentencing too speculative to establish a denial of due process). This is because, as just noted, "[d]ue process claims of pre-accusation delay are to be scrutinized closely for actual prejudice and should not be loosely interpreted." *State v. Robinson,* 696 S.W.2d 826, 831 (Mo.App. 1985). Here, Mr. Dillard claims only that he *might* have received concurrent sentences, not that he would have received them.

In any event, Missouri and other courts have made it clear that *both* prongs of the due process test set out in *Marion* must be met in order to find a Fifth Amendment violation. *See State v. Griffin,* 848 S.W.2d 464, 467–68 (Mo. banc 1993) (an inexcusable delay of over three years still does not justify dismissal where the defendant does not show

actual prejudice and intentional tactics); *State v. Clark,* 859 S.W.2d 782, 786 (Mo.App. 1993) (both factors must be shown).

■ The defendant shoulders the burden of proof to establish not just prejudice, but also that the government delayed solely to gain a tactical advantage, even where the reasons underlying the delay are peculiarly within the knowledge of the prosecution. *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977); 2 W. LaFave & J. Israel, *Criminal Procedure* § 18.5 at 429 (1984); *State v. Robinson,* 696 S.W.2d 826, 831 (Mo.App.1985) (where state gave no explanation for delay and the defendant made no showing of purposeful delay of arrest to gain a tactical advantage, there was no violation of the Due Process clause).

■ Here, the State offered no justification for the delay, prompting the motion court below to conclude that the delay was a result of the State's negligence. Mr. Dillard has made no showing that the State purposefully delayed in order to gain a tactical advantage or to hamper his defense. As we noted *supra,* Mr. Dillard has failed to identify the relevance of the evidence which Ms. Thompson would have offered, and has failed to offer any evidence that Boone County delayed in order to prevent his service of potentially concurrent sentences. There is thus nothing in the record to suggest any reason other than negligence for the State's delay. Such negligence is inadequate to show that the prosecution purposefully delayed in order to obtain a tactical advantage. Accordingly, Mr. Dillard's Fifth Amendment claim was properly rejected.

4. We need not resolve the issue whether the UMDDL applies to Mr. Dillard's claim despite the undisputed fact that Boone County had not filed a detainer against Mr. Dillard. While *State v. Smith,* 849 S.W.2d 209, 213 (Mo.App.1993), indicates that the statute does not apply where a detainer is not filed, *State ex rel. Clark v. Long,* 870 S.W.2d 932 (Mo.App.1994), held that this was not true. Even though the section is part of the Uniform law governing detainers, *Clark* held that this section of the UMDDL (as in effect prior to 1995) did not specifically limit its application to informations, indictments or complaints as to

## IV. DISPOSITION OF DETAINER ACT NOT INVOKED

■ Mr. Dillard also claims that he had a statutory right to a speedy trial under Section 217.460, RSMo 1986 and 1989 Supp., and that this right was violated. Section 217.460 is part of the Uniform Mandatory Disposition of Detainers Law ("UMDDL"). Section 217.450.1 of that Act as in effect at the time in question on this appeal, stated:

> Any person confined in a department correctional facility may request a final disposition of any untried indictment, information or complaint pending in this state against him while so imprisoned. *The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.*

*Id.* **(emphasis added).**

The succeeding section states in relevant part that, with certain exceptions, if the indictment, information or complaint is not brought to trial within 180 days after receipt of a request and certificate made in compliance with Section 217.450, then no court shall have jurisdiction to try it and it shall be dismissed with prejudice. *See* § 217.460.

■ The first issue we must resolve is whether Mr. Dillard properly invoked his right to a speedy trial under Section 217.450.[4] In order to receive the benefit and protection of the UMDDL, the defendant must show a good faith effort to invoke the UMDDL and must substantially comply with its procedural requirements. *State v. Parker,* 890 S.W.2d 312, 317–18 (Mo.App.1994). A fundamental procedural requirement of Section 217.450 is a written demand for speedy disposition ad-

which a detainer had been filed, and thus the section could be utilized even where, as here, the defendant was not held under a detainer. Because we find that Mr. Dillard was not entitled to relief, we assume for the purposes of this appeal that *Clark's* analysis is correct and that he had a right to invoke the UMDDL. We note that the UMDDL was amended in 1995 to add the phrase that disposition could only be had of complaints, informations or indictments "on the basis of which a detainer has been lodged against" the defendant.

dressed to the court and prosecuting attorney where the charges are pending.

Mr. Dillard admits he made no such written demand to the court or prosecutor of Boone County. He says that we should nonetheless find that he substantially complied with the requirements of the statute because he did request the circuit court and prosecutor of *Callaway* County to dispose of the charges pending against him in that county. He says that because he tried to find out about all pending charges but was unable to learn of the Boone County charges while imprisoned in Camden County, and because the Callaway County charges involved the "same transaction" as the Boone County charges, he sufficiently complied with the requirements of Section 217.450.

■ We disagree. First, we note that there is nothing in the record to even suggest that Mr. Dillard attempted to invoke the UMDDL or comply with the requirements of the statute with respect to the *Boone County* charges at issue here.[5] The rights provided in Section 217.460 derive only from a specific request identifying a particular case. *Duncan v. State*, 864 S.W.2d 431, 433 (Mo.App. 1993) (request for disposition referencing prior complaint case number did not constitute request for disposition of subsequent indictment on identical charges under a different case number). The protection afforded by a request under Section 217.450 *et seq.* does not carry over to charges in other cases "even if based on similar facts." *Id.* Cer-

tainly notification of a different prosecutor and court in a different county does not constitute substantial compliance with the requirement of written notification to the prosecutor and court in Boone County.

■ Nonetheless, Mr. Dillard contends that the UMDDL should be interpreted to permit a single request for disposition of a detainer to operate as a request for disposition of all charges pending in that state arising from "the same transaction." He relies on Article V, paragraph 4 of Section 217.490 *et seq.* (known as the Interstate Agreement on Detainers or "AOD"), which provides that in certain situations an interstate detainer for one indictment or information will also permit trial of the defendant for other crimes arising out of the same transaction. While we agree with Mr. Dillard that the UMDDL should be construed in harmony with its counterpart for interstate detainers wherever possible, *State ex rel. Clark v. Long*, 870 S.W.2d 932, 937 (Mo.App.1994),[6] we cannot agree that this general rule of construction would authorize us to import this provision into the UMDDL where it is repugnant to the specific requirement of Section 217.450 that the prosecutor and court of the county in which the charges are pending must receive a written request for disposition in order to invoke the UMDDL.

Even more basically, we agree with the motion court that the facts of the Boone County case did not arise out of the same transaction as did the earlier information

**5.** Mr. Dillard contends that had Boone County lodged a detainer, he would have known about the Boone County charges and presumably would have requested a speedy disposition of those charges under the UMDDL. While the State does have an obligation to bring a pending indictment or information to trial with reasonable promptness, the State is under no duty to lodge a detainer, at least where such indictment or information has yet to be filed. *Cf. State v. Gray*, 658 S.W.2d 41, 44 (Mo.App.1983); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (no due process violation for pre-arrest delay unless prosecution seeks tactical advantage); *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). There is nothing in the record to suggest that the State deliberately failed to lodge a detainer in order to prejudice Mr. Dillard. Moreover, the nature of the charges was not unknown to Mr. Dillard. Nothing prevented him from determin-

ing the location of the stores where he wrote bad checks and then inquiring in those counties as to whether charges were pending.

**6.** We also have serious reservations about Mr. Dillard's suggestion that he is entitled to *require* the State to try him on all charges arising out of the same transaction, citing *State v. Howell*, 818 S.W.2d 681, 682–3 n. 1 (Mo.App.1991). While *Howell* could be read to so suggest in *dicta*, such a broad reading of its language is not required. It would be more in harmony with the statute to read the "same transaction" language as simply permitting the receiving state to try the defendant on amended or supplemental informations or indictments without the need to file a new detainer, as long as the amended or supplemental informations or indictments arose out of the same transaction.

filed in Callaway County. While both prosecutions involved bad or forged checks written on a closed account by Mr. Dillard, each involved different checks. In fact, at the trial of the Boone County case, Mr. Dillard sought to exclude evidence of other bad checks written on his closed account because they would constitute evidence of other crimes. We agree that the crimes for which Mr. Dillard was prosecuted in Boone County involved separate and distinct transactions from the crimes as to which charges had previously been brought in Callaway County. The mere fact that Mr. Dillard used similar schemes to try to defraud different Gerbes stores in different counties does not make the crimes part of the same transaction as that term is used in the statute.

■■■ We similarly reject Mr. Dillard's claim that because he was on parole from Texas at the time of his arrest on the Boone County charges, the interstate AOD mandated a dismissal of the Boone County charges for failure to be brought to trial within 120 days after his return to Missouri. The AOD applies only where the defendant is imprisoned in a correctional institution in another jurisdiction. *See* § 217.490; *State v. Leisure*, 838 S.W.2d 49, 54 (Mo.App.1992) (AOD not applicable to pretrial detainee). Mr. Dillard was not in custody at the time of his arrest on the Boone County charges. Rather, he was on parole and had moved back to Arkansas. The AOD also requires the existence of a detainer filed by one state against a prisoner being held in another. *State v. White*, 728 S.W.2d 564, 566 (Mo.App.1987). Neither Boone nor Callaway County filed an interstate detainer against Mr. Dillard. As noted above, Boone County never filed any detainer against him at all. Finally, as noted above, Mr. Dillard did not request disposition of his Boone County charges, and thus cannot invoke the AOD.

For all of these reasons, we hold that Mr. Dillard did not bring himself under the protection of the UMDDL or the AOD nor did he comply with their procedural requirements, and he is not entitled to have his conviction set aside on jurisdictional grounds.

Mr. Dillard's conviction and denial of his Rule 29.15 motion are affirmed.

All concur.