STATE of Missouri, Plaintiff–Respondent,

v.

Melvin M. GREEN, Defendant–Appellant.

No. SD 31170.

Missouri Court of Appeals, Southern District, Division One.

Aug. 13, 2012.

Emmett D. Queener, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Timothy A. Blackwell, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Melvin M. Green ("Defendant") challenges his convictions and resulting consecutive life sentences for attempted forcible rape, two counts of forcible sodomy, and three counts of first-degree robbery. *See* sections 564.011, 566.030, 566.060, and 569.020.[1] Defendant does not challenge the sufficiency of the evidence to sustain his convictions or assert that any reversible error occurred during his trial; rather, Defendant claims the charges against him should have been dismissed because he was denied his statutory and constitutional rights to a speedy trial.[2]

The State concedes that "[t]he delay of nineteen months from the date of arrest to the beginning of trial is presumptively prejudicial" but asserts that other factors

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

2. Defendant's point cites the Sixth and Fourteenth Amendments to the U.S. Constitution, MO Const. art. 1, sect. 10 and 18(a), and section 545.780. Because the only remedy Defendant seeks is dismissal, we will analyze only his constitutional claim. His statutory right to a speedy trial under section 545.780 "limits the harsh remedy of dismissal for its violation to only those cases where there is also a constitutional violation, which should be analyzed separately from the statutory violation." *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 727 (Mo. banc 2007) (citation omitted).

support the trial court's denial of Defendant's "motion to dismiss for violation of Defendant's right to speedy trial" ("the speedy-trial motion").[3] Because Defendant's defense strategy was not impaired by the delay—the most important factor to be considered—and the trial court was not required to believe Defendant's testimony about other consequences he claimed to have suffered—the trial court did not err in refusing to dismiss the case.

### Applicable Law

The protections of the Sixth Amendment of the United States Constitution and article I, section 18(a) of the Missouri Constitution "provide equivalent protection for a defendant's right to a speedy trial." *State v. Taylor*, 298 S.W.3d 482, 504 (Mo. banc 2009). The United States Supreme Court described as follows the difficulty of determining when such a violation has occurred.

[T]he right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

. . . .

[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case: "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." [*Beavers v. Haubert,*] 198 U.S. [77] at 87, 25 S.Ct. [573] at 576, 49 L.Ed. 950 [ (1905) ]. The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy.

*Barker v. Wingo*, 407 U.S. 514, 521–22, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (footnotes omitted).

In determining whether a defendant's right to a speedy trial has been violated, "courts must still engage in a difficult and sensitive balancing process." *Id.* at 533, 92 S.Ct. 2182. That balancing process involves the consideration of four factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Taylor*, 298 S.W.3d at 504; *see also Barker*, 407 U.S. at 530, 92 S.Ct. 2182. "[T]he pertinent time period begins at arrest or indictment; that is, when a suspect officially becomes an ac-

---

**3.** The speedy trial motion asserted violations of "the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as Article One, Sections 10, 18(a), and 21 of the Missouri State Constitution and [section] 545.780[ ]." Because his point relied on does not assert a violation of his rights under the Fifth or Eighth Amendments or article 21 of the Missouri Constitution, any issues related to those provisions are

not preserved for review. *State v. Williams*, 887 S.W.2d 769, 770 (Mo.App. S.D.1994). Additionally, while Defendant cites Missouri's general due process provision of art. 1, sect. 10 in his point and in his conclusion to his point, he does not cite any authority or develop any argument concerning it. As a result, his art. 1, sect. 10 claim is deemed abandoned. *State v. Irby*, 254 S.W.3d 181, 195 (Mo.App. E.D.2008).

cused." *State v. Scott,* 348 S.W.3d 788, 794 (Mo.App. S.D.2011).

> The right to a speedy trial does not apply to pending complaints that represent only the possibility that a criminal indictment or information will be filed. [*Dillard v. State,* 931 S.W.2d 157, 161 (Mo.App. W.D.1996).] A mere complaint places no actual restraints on a defendant, nor does its filing require him to begin to protect his interests. *Id.* The filing of a criminal complaint does not make a defendant an "accused."

*State v. Williams,* 120 S.W.3d 294, 299 (Mo.App. W.D.2003).

## Standard of Review

Although Defendant's brief includes a section entitled "Standard of Review," it does not identify a particular type of error alleged to have been committed by the trial court, such as abusing its discretion, ruling without sufficient evidence, ruling against the weight of the evidence, or erroneously declaring or applying the law. *Cf. State v. Knox,* 697 S.W.2d 261, 263 (Mo. App. W.D.1985) (order dismissing for speedy trial violation under section 545.780 reviewable as lacking substantial evidence to support it, being against the weight of the evidence, and erroneously declaring or applying the law). Instead, Defendant's "[s]tandard of [r]eview" simply presents the *Barker* factors as the means for determining whether Defendant's speedy trial right was violated, including *Barker's* recognition that the factors involve a "difficult and sensitive balancing process." 407 U.S. at 533, 92 S.Ct. 2182.

The State's brief points out that "the appellate courts have applied the various factors in the speedy trial analysis without setting forth any standard of review." *See, e.g., Taylor,* 298 S.W.3d at 504; *State v. Atchison,* 258 S.W.3d 914, 919–20 (Mo. App. S.D.2008).

In the absence of a specific assertion by Defendant as to the nature of the error he alleges was committed by the trial court or an assertion that our review should be purely *de novo,* and because the trial court is called upon to first make and then balance various factual determinations (as guided by the *Barker* factors) to instruct its ultimate legal conclusion as to whether a constitutional violation has occurred, we will review its ruling as we would a ruling on a motion to suppress. In other words, the trial court's ruling must be supported by substantial evidence; it must not represent an abuse of discretion; we view the facts and the reasonable inferences favorably to the ruling; and we review *de novo* whether the Sixth Amendment has been violated. *Cf. State v. Johnson,* 354 S.W.3d 627, 631–32 (Mo. banc 2011) (describing the review process regarding a ruling on a motion to suppress evidence raising Fourth Amendment issues); *Scott,* 348 S.W.3d at 794 (order denying dismissal for Fifth Amendment speedy trial violation reviewed for an abuse of discretion); *United States v. Porchay,* 651 F.3d 930, 935 (8th Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1610, 182 L.Ed.2d 173 (2012) (in the context of federal speedy trial statute, the trial court's legal conclusions are reviewed *de novo,* factual findings are reviewed for clear error, and the final decision is reviewed for an abuse of discretion); *United States v. Summage,* 575 F.3d 864, 873–74 (8th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1161, 175 L.Ed.2d 988 (2010) (trial court ruling on dismissal without prejudice for violation of statutory right to a speedy trial reviewed for abuse of discretion).

A trial court has abused its discretion if its ruling is

> clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense

of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the court abused its discretion.

*State v. Roller*, 31 S.W.3d 152, 158 (Mo. App. S.D.2000).

### Facts and Procedural Background

The underlying crimes were committed in Greene County in 1995. The police utilized a number of investigative techniques to attempt to solve the case, but they were unsuccessful in identifying the perpetrator until they received notification of a "hit" in July 2006 from a national DNA indexing system. The hit indicated that the unknown DNA profile developed from evidence seized at the scene was associated with another DNA profile that had recently been entered into the system.

This information led a Springfield Police detective to serve a search warrant on Defendant while he was in custody in Illinois awaiting trial on other charges. The warrant was used to obtain a buccal swab from Defendant for further DNA analysis. Defendant was also interviewed by the Springfield detective and a Joliet, Illinois detective in August 2006. The Springfield detective did not arrest Defendant when she met with him in August 2006 as there was still work to be done on the buccal swab she had obtained from him.

Near the end of August 2006, the detective received a telephone call informing her that the buccal swab analysis had produced a "confirmation[.]" She received a letter to that effect a few weeks later. The DNA analysis revealed that Defendant could not be eliminated as a match when his DNA profile was compared to the DNA profile from shorts and a bed sheet obtained from the Greene County crime scene. The frequency in the population of the DNA profile developed from the shorts and sheet was "approximately one in 468 quintillion in the Caucasian population and approximately one in 8 quintillion in the black population." One of the Greene County victims recalled that the perpetrator "was black[.]"

The State filed a felony complaint on December 27, 2006. The complaint alleged that there was probable cause to believe that Defendant had committed the following crimes in Greene County: first-degree burglary, three counts of first-degree robbery, two counts of forcible sodomy, and two counts of attempted forcible rape. A warrant for Defendant's arrest was issued on January 1, 2007.[4] On September 27, 2007, before Defendant was arrested on the Greene County warrant, Defendant filed a *pro se* demand for a speedy trial ("demand for speedy trial"). A note in the State's file, quoted in Defendant's speedy-trial motion, indicated that after receiving the demand for speedy trial, the State confirmed that Defendant was still being held in the county jail in Joliet, Illinois on charges pending there and that those Illinois charges were not expected to be disposed of in the "near future."

Defendant was arrested on the Greene County warrant on March 9, 2009, and he appeared before the trial court the following day. On March 26, 2009, Defendant moved for and received a change of judge, and the case was assigned to the new judge on April 1, 2009.

The State sought a continuance of a preliminary hearing scheduled for June 2, 2009 because one of the alleged victims of the crimes referenced in the felony com-

---

**4.** The legal file indicates that the warrant was filed on January 2, 2007, but at the hearing on the speedy trial motion the State stipulated to certain facts regarding the procedural timeline, including that the warrant was filed on January 1, 2007.

plaint was out of the country. The hearing was reset to August 10, 2009 over Defendant's objection. On June 22, 2009, the State filed an amended complaint that dropped the "two sex counts" related to the out-of-the-country victim. As a result, her testimony was no longer needed at the preliminary hearing, which was held on August 10, 2009.

At the conclusion of the preliminary hearing, the judge found probable cause and the case was "bound over for arraignment in Circuit Court on August 14, 2009[.]" The felony information was filed on August 13, 2009, the day before Defendant's arraignment. After Defendant was arraigned on the felony information, he again filed a motion for change of judge, and the case was assigned to a new judge on August 27, 2009.

At a pretrial conference held on March 10, 2010, the State requested that trial of the matter be "set off" because two of the victims lived outside the country, the case needed a "number one setting on the Court's docket," the "lead" prosecutor was scheduled for paternity leave, and the requested October 18, 2010 trial date was compatible with the calendars of the trial court and all counsel.

The speedy-trial motion was filed by defense counsel on August 25, 2010. An evidentiary hearing was held on the motion on October 12, 2010, a week before Defendant's trial. Defendant testified at the motion hearing that he was acquitted of his Illinois charge and was brought to Missouri following that acquittal. Defendant testified that he was brought to Missouri "like 30 months" after his interview with the Springfield detective. When asked by his counsel to "[t]ell [him] about how the length of your incarceration pretrial has affected you[,]" Defendant testified that a children's services agency in Illinois was pursuing the termination of his parental rights, but he believed that the agency was "trying to wait [']till this case is dissolved [sic]" and that this caused him stress and many "sleepless nights[.]"

Defendant testified that his being "held this long pretrial" caused him to lose approximately 60 pounds. He said that his stress increased on each of two occasions when his requests for bond reductions were denied. He also believed that the prosecution of the instant case, after the Illinois case, including "all these pretrial conferences[,]" hurt his relationship with his daughters and sons, caused him to lose a business, and cost him all of his possessions. Defendant said his goal in filing his demand for a speedy trial was to get concurrent time on the cases or credit for the time he had spent in jail.

After taking the speedy-trial motion under advisement, the trial court denied it two days later, leaving the case set for a jury trial as previously scheduled. Defendant subsequently waived his right to a jury trial, and his bench trial commenced on October 19, 2010. After taking the case under advisement, the trial court found Defendant guilty of all six counts charged in the amended felony information and sentenced him to serve six consecutive life terms. This appeal timely followed.

## Analysis

■ Defendant's point asserts the trial court erred in overruling the speedy-trial motion because there was "a forty month delay from the time he filed his demand for speedy trial and a nineteen month delay from the time he was arrested after his return to Missouri" before he was brought to trial and that "[p]rejudice is presumed based on the inordinate delay in bringing [Defendant] to trial despite his request for a speedy trial." Because the trial court could reasonably have determined that the other *Barker* factors which must be con-

sidered in ruling a motion to dismiss for violation of a defendant's right to a speedy trial were sufficient to rebut that presumption of prejudice, we deny the point.

### The length of delay is presumptively prejudicial

■ As earlier noted, the State concedes that the 19-month period from Defendant's arrest in March 2009 to trial in October 2010 exceeds the presumptively prejudicial period of eight months recognized in Missouri. *State ex rel Garcia v. Goldman,* 316 S.W.3d 907, 911 (Mo. banc 2010); *McKee,* 240 S.W.3d at 729.[5] Thus, we next turn to a consideration of the remaining three *Barker* factors: "(2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Taylor,* 298 S.W.3d at 504.

### The reason for the delay

Defendant argues that the prosecutor is responsible for four months of the total delay in bringing him to trial, that his own requests for change of judge accounted for a 31-day delay, and that the remainder "was the result of the [trial] court's dock-et." He asserts that even with the trial court's docket representing a "neutral reason for a delay," the State is ultimately responsible for it, attributing a total delay of "seventeen to eighteen months" to the State. *See id.* at 531; *State v. Fleer,* 851 S.W.2d 582, 596 (Mo.App. E.D.1993) (deliberate delays weigh heavily against the government; a "neutral" reason such as overcrowded courts weighs less heavily but is still considered because the State is responsible to try the case; and a missing witness may justify a delay).

Even if we do not excuse any of the four months of delay due to one of the State's witnesses being unavailable for a preliminary hearing because she was out of the country, Defendant offers no argument as to why the bulk of the delay attributable to the trial court's overall docket should be weighed heavily against the State. As a result, we find this factor to weigh only somewhat against the State, while noting that the process involves a balancing of all of the factors. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182; *Scott,* 348 S.W.3d at 795. No one factor is "either a necessary or sufficient condition to the finding of a depriva-

5. The relevant period of delay here is 19 months—not the 40 months alternatively suggested by Defendant—because it was Defendant's date of arrest, not the date of the filing of the criminal complaint, that triggered his speedy trial rights under the Sixth Amendment and article 1, section 18(a) of the Missouri Constitution. *See Scott,* 348 S.W.3d at 794; *Williams,* 120 S.W.3d at 299. Defendant argues that an older United States Supreme Court case, *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), supports applying speedy trial protection before his arrest. While the concurring opinion in *Marion* advocated a broader scope for Sixth Amendment protections, *see id.* at 326–35, 92 S.Ct. 455, the majority opinion stated:

Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to ex-tend that reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.

*Id.* at 321, 92 S.Ct. 455. (footnote omitted). Defendant also argues—without citation to authority—that the "only reason" the State waited to arrest Defendant was his restraint in Illinois and "[t]he State simply chose to delay proceeding on the [c]omplaint" and the delay should therefore be held against the State. At most, this appears to be a Fifth Amendment issue. *See Scott,* 348 S.W.3d at 794. Because such a claim has not been presented in this appeal, it has not been preserved for our review. *See Williams,* 887 S.W.2d at 770; *Irby,* 254 S.W.3d at 195.

tion of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S.Ct. 2182.

#### The defendant's assertion of his right

The State acknowledges, and we agree, that the third factor weighs in favor of Defendant, who filed the speedy-trial motion on August 25, 2010.[6] Defendant clearly asserted his right to a speedy trial.

#### Prejudice to the defendant

Defendant acknowledges that the fourth factor—the prejudice to him caused by the delay—is the most important element in determining whether a speedy trial violation has occurred. *State v. Greenlee*, 327 S.W.3d 602, 612 (Mo.App. E.D.2010). Defendant points to no such prejudice in his case. Instead, Defendant relies on the statement in *Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), that "[a]ffirmative proof of particularized prejudice is not essential to every speedy trial claim." Defendant does not articulate why such proof is not essential in his case.

In considering the effect of presumptive prejudice in *Doggett*, the United States Supreme Court held that a six-year delay attributable to the "Government's inexcusable oversights" entitled the defendant to relief. *Id.* at 657. In *Garcia*, our high court, noting *Doggett*'s recognition that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify[,]" observed that four witnesses had disappeared in the seven-year delay

between Garcia's indictment and his arrest and stated that "*Barker* compels the conclusion that the prejudice to Garcia is obvious." 316 S.W.3d at 913 (quoting *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686). In light of the seven-year delay, the Court found that the State had the affirmative burden to "show that Garcia's defense was unimpaired" and that "[t]oo many witnesses and too many years [had] slipped away for the state to carry this burden." *Id.* at 913–14.

We note that both *Doggett* and *Garcia* addressed excessive delays of six years or more. 505 U.S. at 657, 112 S.Ct. 2686, 316 S.W.3d at 913.[7] And even *Doggett* acknowledged that "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria"—"it is part of the mix of relevant facts, and its importance increases with the length of delay." 505 U.S. at 655–56, 112 S.Ct. 2686. In *State v. Ivester*, 978 S.W.2d 762 (Mo.App. E.D.1998), the Eastern District noted *Doggett*'s teaching that "detailed proof of prejudice may not be necessary" but found that a delay of more than twenty-seven months was "not as egregious as that in *Doggett*" and that the evidence in the record, including the defendant's own statements, rebutted the presumption of prejudice. *Id.* at 767–68; *see also State v. Davis*, 903 S.W.2d 930, 936–37 (Mo.App. W.D.1995) (after excluding delay attributable to the defendant, a nineteen-month delay did not violate speedy trial right where, among other things, defendant "was not prejudiced in his ability to make a defense by the delay").

Defendant does not allege that the State intentionally delayed his trial in order to

---

6. Defendant had previously indicated a desire for quick action by filing a premature, *pro se* demand for a speedy trial before he was arrested on the charges and before the felony information was filed.

7. We noted in *Atchison*, 258 S.W.3d at 920 n. 7, that "[f]ourth-prong prejudice presumptions apparently are rarely indulged for delays less than five years."

prejudice him or give any other indication why he believes we should apply *Doggett*'s burden-shifting rule based on the delay at issue in his case. We do not find that the instant case involves the kind of negligent excessive delay that is so extreme that it would relieve Defendant of his obligation to provide "affirmative proof of particularized prejudice[.]" *Doggett,* 505 U.S. at 655, 112 S.Ct. 2686.

■ Three things are generally considered in assessing prejudice: "(1) prevention of oppressive pre-trial imprisonment; (2) minimization of a defendant's anxiety and concern; and (3) limitation of the possible impairment of the defense." *State v. Drudge,* 296 S.W.3d 37, 43 (Mo.App. E.D. 2009). "The last of the three components is considered most vital to the analysis." *State v. Bell,* 66 S.W.3d 157, 165 (Mo.App. S.D.2001). "Speculative or possible prejudice is not sufficient." *Drudge,* 296 S.W.3d at 43.

As earlier noted, Defendant makes no assertion on appeal that his defense was actually impaired. He does not claim that any evidence was lost, that any witnesses became unavailable, or that he suffered any other such impediment as a result of the delay at issue here. In fact, Defendant's own stated goal in filing his demand for a speedy trial was to get concurrent time on the cases or credit for his time spent in jail, not to advance or protect his trial strategy. We have previously found that an extended pre-trial incarceration was not, of itself, a reason to find prejudice when the defendant was given a life sentence upon his conviction. *Greenlee,* 327 S.W.3d at 611, 613. Here, Defendant was sentenced to serve *six consecutive* life sentences.

Defendant did claim that he suffered significant stress that caused him to lose about 60 pounds before trial and endure many sleepless nights. Under our standard of review, the trial court was not required to credit that testimony. *State v. Murphy,* 358 S.W.3d 126, 130 (Mo.App. S.D.2011) (the trial judge can believe some or all of a witness' testimony and may disbelieve even uncontradicted testimony); *cf. State v. Gaw,* 285 S.W.3d 318, 320 (Mo. banc 2009) (the trial court is in a superior position to determine the credibility of witnesses testifying in a hearing on a motion to suppress evidence). Even if the trial court had found it credible, such anxiety may still appropriately be determined insufficient when the defendant has failed to demonstrate impairment of his defense. *Greenlee,* 327 S.W.3d at 613.

Defendant also claimed other negative consequences. Assuming, *arguendo,* that the trial court found them credible, our review of his testimony leaves us unable to determine whether it was the delay in his Missouri trial that caused them. Defendant did not explain how the additional "pretrial conferences" actually hurt his relationship with his children. It is also unclear whether his business and possessions were lost due to the delay in bringing his Missouri charges to trial or the pretrial incarceration related to his Illinois charges.

Defendant's failure to demonstrate any impairment to his defense "is weighed heavily in the State's favor and against the defendant." *Id.* Given that such impairment is the most vital factor used to assess prejudice, *Bell,* 66 S.W.3d at 165, the serious consequence of a dismissal, and that this is not a case where the delay was either intentional or so excessive as to remove the need for affirmative proof of particularized prejudice by Defendant, *cf. Doggett,* 505 U.S. at 658, 112 S.Ct. 2686; *Garcia,* 316 S.W.3d at 913, we cannot say—viewing the facts in the light most favorable to the result reached—that the trial court's ruling was "clearly against the

logic of the circumstances then before it and [ ] so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]" *Roller*, 31 S.W.3d at 158. Defendant's point is denied, and the judgment is affirmed.

NANCY STEFFEN RAHMEYER and GARY W. LYNCH, JJ., concur.