STATE of Missouri, Respondent,

v.

Xavier Earl HOLMES, Appellant.

No. WD33325.

Missouri Court of Appeals,
Western District.

Nov. 23, 1982.

---

Fred Duchardt, Public Defender, Liberty, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, John Jacobs, Asst. Atty. Gen., for respondent.

Before KENNEDY, P.J., and WASSERSTROM and LOWENSTEIN, JJ.

WASSERSTROM, Judge.

Defendant appeals from a conviction of robbery in the first degree. He asserts three points of error, but it is necessary to discuss only the first. In that point, defendant complains that he was denied a speedy trial, and he argues that his motion to dismiss the information on that ground should have been sustained. We find that contention meritorious and therefore reverse.

On August 2, 1979, a robbery occurred at Laurie's Liquors in North Kansas City, Clay County, Missouri. Within a short time thereafter, Jones, who was the clerk in charge of the liquor store, was shown a photographic array by the police and identified the defendant.

In mid-November 1979, defendant was apprehended in St. Louis, Missouri. At that time, defendant was wanted not only by the Clay County authorities, but also by the authorities in Jackson County, Missouri, on an unrelated offense of manslaughter. On November 14, 1979, Kansas City Detective Whitaker and North Kansas City Detective Wells went to St. Louis to pick defendant up, apparently under the authority of a Jackson County warrant. During the trip back, Wells told defendant of the Clay County offense and of the investigation which implicated defendant.

The next day, November 15, 1979, Detectives Whitaker and Wells conducted a show-up at the Kansas City, Missouri police headquarters. Witness Jones was asked to be present. Defendant was told that the reason for the showup was the Clay County robbery, and he signed a waiver of his right to have counsel present. As a result of the showup, Jones identified defendant as the one who had robbed him on August 2.

On the same day of November 15, 1979, the Clay County prosecutor filed a complaint against defendant for the robbery offense and a warrant of arrest was issued. A hand written notation was made upon the records of the Kansas City, Missouri police stating "Hold for Clay County," but no copy of the Clay County arrest warrant was ever filed with the Jackson County officials.

Defendant was then tried and convicted in Jackson County on the manslaughter charge, and he was sent to the Missouri Division of Corrections on May 5, 1980. No record was delivered to the state penitentiary of the Clay County proceeding, nor was any detainer filed with respect to the Clay County robbery. Defendant was moved to successively less restrictive types of confinement and finally was transferred to St. Mary's Honor Center, a pre-release facility. At every transfer a check of Holmes' records was made, but no outstanding warrant for arrest was ever revealed.

While Holmes was at the Honor Center, the outstanding Clay County warrant against him was discovered. He was arrested on June 5, 1981, and returned to Clay County where he was formally charged by information on July 10, 1981. The trial which led to the present conviction commenced on September 29, 1981, twenty-two months after his arrest in St. Louis by Detectives Whitaker and Wells.

Prior to trial, defendant filed a motion to dismiss the information because of violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. A hearing was held on that motion and the motion was overruled. That ruling, objection to which has been properly preserved at all stages, constitutes the basis for defendant's first point on this appeal.

I.

The legal principles applicable to delay in criminal proceedings differ sharply depending upon whether the delay is pre-accusatory or post-accusatory. Only post-accusatory delay entitles the defendant to protection of the Sixth Amendment. This limitation arises from the wording of the Sixth Amendment which extends its protection only to "the accused" in a criminal

prosecution.[1] On the other hand, if the delay occurs in the pre-accusatory stage, then the defendant is relegated to the protections afforded by the statutes of limitation and by the due process clause of the Fifth Amendment, which in their operation are substantially more restricted than the Sixth Amendment protection. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Dillingham v. U.S.,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975); *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

Defendant argues that he has suffered deprivation of rights under both the Fifth and Sixth Amendments. However, we need not consider his rights under the Fifth Amendment, since we conclude that his Sixth Amendment rights have been impaired.

■ As indicated above, the test of defendant's entitlement to the protection of the Sixth Amendment depends upon when he became "an accused." Although it was once held that the accusation stage did not commence until the filing of an indictment or information, it has now become authoritatively settled that this stage may also be commenced by the placing of the defendant under arrest. The rule now is that the time for purposes of speedy trial under the Sixth Amendment begins to run from the time of the indictment or information or an arrest, whichever occurs first. *United States v. Marion, supra; Dillingham v. U.S., supra; State v. Paxton,* 535 S.W.2d 558 (Mo.App. 1976); *State v. Black,* 587 S.W.2d 865 (Mo. App.1979); *State v. Haddix,* 566 S.W.2d 266 (Mo.App.1978).

The parties here argue contradictory views as to how the above principles should be applied to the facts of the present case. Defendant's brief sets forth his view to be that "his right to speedy trial arose when the Clay County Prosecuting Attorney filed the complaint against him in the Associate Circuit Court on November 15, 1979." The attorney general, on the other hand, argues that: "Appellant did not become an accused until he was arrested for the robbery charge on June 5, 1981." Neither of those interpretations can be accepted. That of the defendant is somewhat inaccurate and does not quite square (at least unless further explained) with the view expressed in *State v. Black, supra,* which holds:

"The principal and, perhaps, single function of a complaint is to serve as the basis for an application for an arrest warrant, Sec. 544.020 RSMo; Rule 21.08. Being merely an application, which can be refused for constitutional or statutory noncompliance, the complaint itself places no actual restraints on the putative defendant nor does its filing require him to begin to protect his interests; thus, although the complaint may be the first step in a criminal prosecution, see *State v. Nichols,* 330 Mo. 114, 49 S.W.2d 14, 19 (1932); *State v. Flannery,* 263 Mo. 579, 173 S.W. 1053, 1055 (1915), the complaint does not 'initiate a criminal prosecution' and it does not make the putative defendant an 'accused' as those terms are defined in *Marion* and *Dillingham,* for the complaint itself does not initiate any of the financial, social or psychological harm protected against by the right to a speedy trial."

The state likewise is incorrect in that it mistakes when defendant's arrest first occurred.

■ Under the peculiar facts of this case, the correct date which started the clock running for the purpose of speedy trial was November 14, 1979, the date of defendant's arrest in St. Louis by Detectives Whitaker and Wells. True, that arrest was under the authority of a Jackson County warrant. Nevertheless, that arrest was a joint enterprise between officers of both Jackson and Clay Counties for the reciprocal benefit of each. Detectives Whitaker and Wells had engaged in a joint investigation, made a

---

1. The same phraseology is employed in the speedy trial provision of Article I, Section 18(a) of the Missouri Constitution.

joint trip to St. Louis for the purpose of picking up defendant, and Wells informed defendant during the course of that trip that one of the purposes was to bring defendant back in connection with the Clay County robbery. The showup which immediately followed was conducted by both officers, and the showup was utilized for the purpose of having witness Jones make a further identification. As a direct and immediate result of that showup identification, the Clay County prosecutor filed a complaint in Clay County and an arrest warrant issued. Most telling of all, the Clay County authorities made an informal request of the Jackson County authorities that defendant be held for the Clay County offense and a hand written notation to that effect was made on the records in Jackson County.

The fact that defendant was held under arrest in a different jurisdiction under a different and unrelated charge does not make the incarceration any less effective for the purposes of speedy trial in Clay County on the offense in that jurisdiction. *Smith v. Hooey,* 393 U.S. 375, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *State v. Powers,* 612 S.W.2d 8, 12 (Mo.App.1981); *Williams v. Darr,* 4 Kan. App.2d 178, 603 P.2d 1021 (1979). *See also State v. Alexus,* 91 Wash.2d 492, 588 P.2d 1171 (banc 1979). Whether jailed in Jackson County, Clay County or in the state penitentiary at Jefferson City, adverse effects resulted to defendant, particularly with respect to the preparation of his case. This matter of prejudice is more fully considered below in point II D of this opinion.

The state argues that the delay in bringing defendant to trial in Clay County did not result in any undue or oppressive incarceration because he was imprisoned anyway under the manslaughter conviction, and no special anxiety could have been caused to defendant because he did not even know of the Clay County complaint and arrest warrant until June 5, 1981. In support of that argument, the state cites *State v. Haddix, supra,* where a prisoner escaped from the penitentiary, was apprehended and was returned to the penitentiary to continue to serve the original uncompleted sentence. Prosecution for the unlawful escape was commenced almost a year later, and defendant complained that he had been denied a speedy trial on the escape charge. In rejecting that claim, this court did rely in part upon the fact that the defendant had been returned to the penitentiary under his original sentence which still remained uncompleted up to and including the time of his trial on the escape charge; and this court said that "defendant cannot be said to have been unduly or oppressively incarcerated prior to trial or subjected to undue anxiety or concern accompanying public accusation with reference to the escape charge." However, that comment was made as part of an overall inquiry into whether the delay had been prejudicial to the defendant, and the ultimate holding of the court was that there had been no prejudice "[i]n view of the totality of the circumstances presented." The totality of the circumstances of the present case are quite different, as will be discussed below under point II D.

## II.

*Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) laid down the guiding concepts by which to determine Sixth Amendment rights to a speedy trial. The United States Supreme Court decided that a rigid formula would not be proper, but rather each case should be submitted to a sensitive ad hoc balancing test taking into consideration the following factors: (1) the length of the delay; (2) the reasons assigned by the prosecution to justify the delay; (3) whether the defendant made a timely assertion of his right to a speedy trial; and (4) whether the delay resulted in prejudice to the defendant. The Supreme Court declared that the fourth factor should be assessed in the light of the following interests which the speedy trial right was designed to protect: (i) to prevent oppressive pretrial incarceration, (ii) to minimize the creation of state of anxiety to the defendant, and (iii) to limit the possibility that the defense will be impaired. *Barker* de-

clares that the consideration last mentioned is the most serious one, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." This four-pronged analysis has been recognized and applied by the Missouri decisions. *State v. Howell,* 581 S.W.2d 461 (Mo. App.1979); *State v. Paxton, supra.*

A. *Length of Delay.* Much speedy trial litigation has ensued since *Barker.* In a scholarly review of these cases, Joseph, *Speedy Trial Rights In Application,* 48 Fordham L.Rev. 611, 623 n. 71 (1980) states: "There seems general agreement that any delay of eight months or longer is 'presumptively prejudicial.'" So for example *United States v. Washington,* 504 F.2d 346, 348 (8th Cir.1974) holds that the expiration of fourteen months between indictment and trial is a delay sufficiently long to serve as a "triggering mechanism." So also in *State v. Stulce,* 630 S.W.2d 91 (Mo.App.1982) it was held that a twenty-one month delay, although not per se prejudicial, was nevertheless presumptively prejudicial.

■ In the present case the delay between defendant's arrest and the commencement of trial was more than twenty-two months. Under the above authorities, this delay must be deemed presumptively prejudicial.

■ B. *Reason for the Delay.* The burden is upon the state to accord an accused a speedy trial, and if there is delay it becomes incumbent upon the state to show reasons which justify that delay. If it appears that the delay resulted from a deliberate design on the part of the prosecution to gain an advantage over the defendant, that would be unjustified and would be counted heavily against the state. Mere negligence on the part of the prosecution is a more neutral factor but still "should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker v. Wingo,* 407 U.S. at p. 531, 92 S.Ct. at p. 2192. The effect of negligence on the part of the state is stated more strongly in *United States v. Washington, supra* at p. 348, where it is said:

"[N]egligence or laziness of the arresting officers in executing an arrest warrant would be unreasonable, and that this unreasonableness would enter into the calculus of balancing the interests of the government and the accused."

That the delay in this case resulted from negligence on the part of the state cannot be doubted. The Clay County authorities knew full well that defendant was in jail in Jackson County on and after November 14, 1979, including the time when the Clay County arrest warrant was issued. Nevertheless, no copy of that arrest warrant was delivered to the Jackson County authorities. At all times thereafter defendant remained within the penal institutions of this state, and the Clay County officials knew or should have known of defendant's whereabouts at all times here pertinent. Yet at no time were the state correctional authorities informed of the Clay County warrant, and obviously no detainer was ever filed with the Missouri Department of Corrections.

If a detainer had been filed, then defendant would have been in a position to exercise his rights under the Uniform Mandatory Disposition of Detainers Law, Section 222.080, et seq., RSMo 1978. Section 222.-080–2 provides that the director of corrections shall promptly inform each prisoner of any untried complaint against him, and Section 222.080–1 provides that: "Any person imprisoned in a correctional institution of this state may request a final disposition of any untried indictment, information *or complaint* pending in this state against him while so imprisoned." (Emphasis added). That statute states an important policy determination of this state, which has here been violated. Naturally the director of corrections cannot inform a prisoner of a complaint which the prosecuting attorney has not called to the director's attention, and obviously a prisoner cannot demand the disposition of a formal complaint of which he has no knowledge.

A very similar situation occurred in *Williams v. Darr,* 4 Kan.App.2d 178, 603 P.2d 1021 (1979). In *Williams,* while the defend-

ant was a prisoner under a conviction for robbery, he was charged by complaint with an unrelated offense of indecent solicitation of a child, and an arrest warrant was issued. However, no detainer was filed and defendant was not aware of the newly filed charge. In September 1976 he was released on a work release program and on January 6, 1977, he was arrested on the child solicitation charge. After an unsuccessful motion to dismiss, he petitioned for habeas corpus. It was held that the defendant was entitled to discharge because of the violation of his right to a speedy trial. The court held in part as follows:

"Prior to his arrest, petitioner was not informed of the outstanding warrant and had no reasonable means of discovering its existence. No detainer was filed by the State. Under the facts of this case, the State may not be heard to say it was unaware of petitioner's incarceration and whereabouts so as to excuse its failure to file a detainer at KSIR or to serve the arrest warrant in Sedgwick County...."

As in *Williams,* so also here the state was negligent and that negligence must be counted against it with respect to the speedy trial issue.

C. *Assertion of the Right.* The evidence is all one way that defendant did not know of the existence of the Clay County complaint or arrest warrant until June 5, 1981. He testified that promptly after his arrest and return to Clay County on the latter date, he protested about the long delay. His first opportunity to do anything formally in this regard was after arraignment which occurred on July 16, 1981, and the entry of appearance of counsel for him on August 11, 1981. The formal motion to dismiss based on denial of a speedy trial was filed in the trial court on August 26, 1981.

Under these facts, defendant did everything which could be reasonably expected of him in order to assert his right to a speedy trial.

D. *Prejudice to the Defendant.* *Barker v. Wingo, supra,* teaches that the most important factor to be considered in the speedy trial equation is whether the delay has impaired the defendant's ability to make a defense. Such impairment clearly appears in this case. The defense here was one of alibi. Defendant sought to prove that on the evening of the robbery, August 2, 1979, he was in the company of Gloria Doyle and Robert Jackson. However, by the time of this trial, more than two years later, the memory of those two potential witnesses had become so dim as to make them valueless to the defendant. With respect to this matter, the parties formally stipulated in the trial court as follows: "If called to testify in support of Defendant's Motion to Dismiss, Gloria Doyle and Robert Jackson would testify that they know Defendant, Xavier E. Holmes, and that Defendant was frequently in their company during July and August, 1979. They would testify that they cannot recall whether or not Defendant was in their company during the evening of August 2, 1979."

That stipulation brings this case within the ruling of *Barker v. Wingo, supra,* 407 U.S. at p. 532, 92 S.Ct. at p. 2192: "There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." Also to be mentioned is the fact that the passage of time had caused a loss of most of the photographs which had been displayed to witness Jones, upon the comparison of which Jones had selected defendant's photograph for identification. This loss of evidence deprived defense counsel of a tool to be used in cross-examination and for argument before the jury.

*Barker v. Wingo* does mention that prejudice to the defendant may occur because of oppressive pretrial incarceration and anxiety and concern because of the pending charge. *See also State v. Howell, supra.* The state argues that the defendant here did not suffer any prejudice in those respects. However those are merely factors in the total equation and do not have equal weight with the factor of whether the defendant's ability to defend has been impaired.

Although the existing imprisonment under the manslaughter charge would have occurred regardless of the robbery charge, the existence of the two separate offenses brings into focus another element of prejudice which would not otherwise be present and which the state does not mention. If the Clay County charge had been brought to speedy trial, the sentence thereunder could have been made concurrent with the manslaughter sentence. This loss of a full opportunity for concurrent sentences is an element of prejudice to be considered. *Smith v. Hooey, supra; State v. Powers, supra; Williams v. Darr, supra.*

Under the totality of the circumstances, we have no hesitancy in holding that defendant has been prejudiced by the undue delay in bringing him to trial on the Clay County robbery charge. The judgment and sentence is therefore reversed.

All concur.