STATE of Missouri, Respondent,

v.

Rickey E. FERDINAND, Appellant.

No. WD 73610.

Missouri Court of Appeals,
Western District.

May 15, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 26, 2012.

Application for Transfer
Denied Aug. 14, 2012.

S. Kate Webber, Kansas City, MO, for appellant.

Shaun J. MacKelprang and Daniel N. McPherson, Jefferson City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, CYNTHIA L. MARTIN, Judge and JOEL P. FAHNESTOCK, Special Judge.

CYNTHIA L. MARTIN, Judge.

Rickey Ferdinand ("Ferdinand") appeals from the trial court's judgment convicting him of forcible rape after a bench trial. Ferdinand contends that the trial court erred in denying his motion to dismiss for violation of his right to a speedy trial and his motion to dismiss for violation of his due process rights in that (1) he was brought to trial seventeen years after his initial arrest, and after the State had twice dismissed and re-filed the charges against him; (2) he demanded a speedy trial after the second and third filings of charges

against him; and (3) the State's decision to twice dismiss and re-file the charges against him was an intentional device to gain tactical advantage. Ferdinand also claims that as a result of the delay in his ultimate prosecution, his ability to demonstrate the Victim's motivation to lie was prejudiced because he was unable to locate a witness, and that he was required to serve more prison time because he was deprived of the opportunity to serve a concurrent sentence at an earlier point in time. We affirm.

## Factual and Procedural History[1]

The material facts are undisputed. On August 19, 1993, Ferdinand was indicted and charged with forcible rape and sexual assault for events that occurred on March 18, 1993 ("the First Filing"). The Victim identified Ferdinand as her attacker. As part of the investigation, vaginal swabs were taken from the Victim in an effort to obtain DNA evidence. The trial court granted multiple trial continuance requests from both Ferdinand and the State in anticipation of obtaining DNA test results. The State's final application for continuance was denied approximately two weeks prior to trial. On the day of trial, March 28, 1994, the State dismissed the charges.

On April 11, 1994, less than a month later, Ferdinand was again indicted and charged with forcible rape and sexual assault for the events that occurred on March 18, 1993 ("the Second Filing"). On July 29, 1994, Ferdinand filed a request for speedy trial. On August 1, 1994, the charges were dismissed after it was deter-

mined that the DNA test results were inconclusive.

The remainder of the DNA sample was archived and stored in the Kansas City Police Crime Laboratory's freezer. In 2009, the sample was tested using new technology that was not available in 1993 or 1994. The test results identified Ferdinand as the source of the semen collected by the vaginal swabs.

On May 28, 2010, a third indictment was filed charging Ferdinand with forcible rape with a weapon, and sexual assault in the first degree, for the events that occurred on March 18, 1993 ("the Third Filing"). On June 4, 2010, Ferdinand filed a motion for change of judge. On July 9, 2010, a new judge was assigned. At a pre-trial conference on August 6, 2010, the cause was set for trial on February 14, 2011. On December 15, 2010, Ferdinand filed "Defendant's Re–Assertion of His Right and Request for Speedy Trial" alleging that he had originally asserted this right on July 29, 1994 in connection with the Second Filing. Approximately one month later, Ferdinand filed a motion to dismiss on due process grounds and a motion to dismiss on speedy trial grounds.[2]

On February 9, 2011, the trial court held an evidentiary hearing on Ferdinand's motions. Dawn McClinton ("McClinton"), an investigator with Ferdinand's attorney's office, testified that she tried to locate witness Donald Collier ("Collier"), as the Victim reported that the alleged rape had occurred at his home. McClinton testified that in an effort to locate Collier, she contacted Jackie Ferdinand ("Jackie"),

1. "We view the facts in the light most favorable to the verdict." *State v. Nelson*, 334 S.W.3d 189, 191 n. 1 (Mo.App. W.D.2011).

2. Ferdinand also filed a motion to dismiss because of the expiration of the statute of limitations but the denial of that motion has

not been raised in this appeal. In addition, although represented by counsel, Ferdinand filed an additional *"pro se"* motion to dismiss on speedy trial grounds raising substantially the same issues raised in the motion filed by counsel.

Collier's ex-girlfriend [3] and Ferdinand's sister, on two occasions. Jackie informed McClinton that she still saw Collier from time to time. McClinton gave Jackie her card and instructed her to have Collier contact her if Jackie saw him. McClinton never heard from Collier. McClinton stated that she searched Collier's name in Case.net but multiple "Donald Colliers" came up. Since McClinton did not have any other identifiers such as Collier's date of birth or his middle initial, her search ended there. McClinton stated that if she had located Collier, she would have asked him if he remembered whether the Victim and Jackie had spent the night at his house on the night of the incident,[4] and if he remembered anything else about the night of the incident. Ferdinand's counsel also informed the trial court that if Collier had been found, McClinton would have asked him about an allegation that the Victim stole money from Collier on the night of the alleged rape. Ferdinand argued that the Victim may have fabricated the rape allegation solely to deflect blame from her alleged theft.

Jackie testified during the hearing on Ferdinand's motions that she remembered nothing about the events of March 18, 1993. Jackie testified that she did not remember the Victim, the Victim accusing Ferdinand of rape, Ferdinand going to jail, or talking to the police about the incident. Even after reading the police report where she purportedly gave the police consent to search her bedroom and reported that she believed the Victim stole money from Col-

lier and lied about the alleged rape, Jackie did not recall anything about the incident. Jackie testified that she had been using marijuana and PCP on a regular basis from some time prior to 1993 through the present.

Rick Knight ("Knight"), an assistant prosecuting attorney, testified that he had been assigned Ferdinand's case in 1993 and handled it in 1994. Knight testified the First Filing was continued multiple times by both the State and Ferdinand while the parties awaited DNA results. Knight testified that DNA evidence would make the case stronger if it identified Ferdinand and believed it was needed to prove the case beyond a reasonable doubt. Because the DNA evidence was not available by the date of trial, the First Filing was dismissed.

Knight testified that after the Second Filing, the DNA test results came back "inconclusive." At that point, the State's evidence was limited to the testimony of the Victim. Ferdinand denied that he even knew the Victim. Knight thus testified that without DNA evidence, he felt there was not enough evidence to establish guilt beyond a reasonable doubt. He conceded that the decision to dismiss is a matter of prosecutorial discretion, and noted that "You want to proceed on a case where you feel you have sufficient evidence to not only get to the jury, but prove [guilt] beyond a reasonable doubt." Knight testified that in deciding whether to proceed with a case, he considers "whether the evidence will get a convic-

3. We refer to Ferdinand's sister by her first name to avoid confusion. No inappropriate familiarity or disrespect is intended. Although Jackie testified that she could not remember how long she was in a relationship with Collier, she did testify that he was her boyfriend in 1993 or "somewhere around there," and that Collier claims to be her daughter's father.

4. Jackie gave a statement to the police in connection with the initial investigation of the Victim's rape allegation and in that statement told the police that she and the Victim had spent the night at Collier's house on the night of the alleged rape.

tion, will satisfy the community, and will be fair to the defendant."

Frank Booth ("Booth") testified that in August 1993, he was a chemist with the Kansas City Police Crime Laboratory and reviewed the evidence collected (a rape kit containing the vaginal swabs and a condom). Booth tested the DNA twice. Both tests resulted in no conclusive DNA profile. The testing that Booth used in 1993 was referred to as "RFLP,"[5] the original DNA testing available in the scientific community. RFLP was still considered a new science in 1993.

Booth testified that the remaining DNA sample was archived in the laboratory freezer in the event future technology might be able to derive further information. Booth testified that today's technology permits examination of a DNA sample 1,000 times smaller than that required by RFLP, and allows a chemist to replicate DNA to create a larger sample. Booth testified that the technology used to test the remaining DNA sample in 2009 was not available in 1993 and 1994.

Scott Hummel ("Hummel"), a forensic specialist with the Kansas City Police Crime Laboratory, testified that in 2009 he examined the evidence that was collected in 1993 at the request of the Cold Case Sex Crimes Unit of the Kansas City Police Department and the Jackson County Prosecutor's Office. He tested DNA extracts from the vaginal swabs of the Victim and blood from both the Victim and Ferdinand. From the swabs, he found a profile that matched Ferdinand and a profile that matched the Victim. Ferdinand was identified as the source of the semen from the vaginal swabs.

At the conclusion of the hearing, the trial court denied Ferdinand's motions. The trial court stated that Ferdinand's search for Collier did not appear to be a diligent, complete search. The trial court further noted that although Ferdinand alleged that Collier might know something about a motive for the Victim to lie, "I don't know what the lie would have been. I don't know whether the lie would have been that there was sexual activity or the lie would have been whether it was forced activity; I don't know. But, again, I do think that's all important, in the way I read the case authority on your issues of prejudice."

Ferdinand had also argued that had his right to a speedy trial been observed, the sentence on the pending charges could have been running concurrently with an unrelated sentence he was serving for a crime he was charged with in 1992 and convicted of in 1994. The trial court rejected this argument, noting that Ferdinand could have pleaded guilty at the time of the First Filing or the Second Filing had he desired the advantage of concurrent sentences.

Following the trial court's denial of his motions, and pursuant to plea negotiations, Ferdinand waived his right to a jury trial in exchange for an agreement that, should Ferdinand be convicted, the State would recommend a sentence of seven years imprisonment to run concurrently with the unrelated sentence he was serving.

On February 14, 2011, the day of Ferdinand's bench trial, the State amended the charge of forcible rape with a weapon to a count of forcible rape by the use of forcible compulsion.[6] The charge of sexual assault

---

**5.** Although not defined in the record, RFLP is an acronym for "restriction fragment length polymorphism." *See* http://www.dna.gov/ basics/analysis history (last visited April 16, 2012).

**6.** Ferdinand's agreement to the amendment of the charges was a part of his agreement

in the first degree was dismissed. Ferdinand asked the trial court to reconsider his motion to dismiss for violation of the right to a speedy trial. Ferdinand's motion was once again denied. The trial court observed:

I think that the reasons that the delay happened, in my opinion the State has the option when we have DNA on cold hits or variations of cold hits, I think that the State can bring those cases. And I think that waiting for DNA evidence is a legitimate reason for dismissing a case and re-filing it, because we have cold DNA on a regular basis now.... I don't think the case is prejudiced by delay. Certainly under the nature of this type of case I think there is even less chance there is a prejudice.

. . .

I think that there was an assertion of rights twice ... the first time this case was charged there were a number of requests for continuances by both parties, clearly in my opinion that means that it is more difficult for the defendant to challenge speedy trial when they request continuances themselves. The second time, once that request was made, I think the State dismissed in a very reasonable amount of time so that the defendant wasn't subject to these charges for an extended period of time. And I think that re-filing again was reasonable, and the case has been moving forward as quickly as I think is reasonable in light of the fact that this is the first trial setting and everybody agreed to this trial setting at the time of the initial case management conference.

The case proceeded to trial. The only evidence presented during the bench trial was the "Parties Stipulation of Facts." In with the State to waive a trial by jury in exchange for an agreed recommended sen-

the Stipulation, Ferdinand *agreed* that on March 18, 1993, he had sexual intercourse with the Victim without her consent by use of forcible compulsion. The trial court found Ferdinand guilty of forcible rape by the use of forcible compulsion. Pursuant to the parties' plea agreement, the trial court sentenced Ferdinand to seven years imprisonment to run concurrently with the sentence he was already serving.

Ferdinand filed this appeal to contest the denial of his motions to dismiss for violation of his right to a speedy trial and on due process grounds.

## Standard of Review

"Appellate courts review a trial court's ruling on a motion to dismiss for abuse of discretion." *State v. Scott,* 348 S.W.3d 788, 794 (Mo.App. S.D.2011). " 'A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (citation omitted).

## Analysis

In Ferdinand's single point relied on, Ferdinand argues that the trial court erred in denying his motions to dismiss the Third Filing for violations of his rights to due process and a speedy trial. Ferdinand complains (i) that he was not brought to trial until seventeen years after his initial arrest, (ii) that he made demand for a speedy trial on July 24, 1994, and subsequently continued to assert his speedy trial right; and (iii) that the State's act of twice dismissing and re-filing the charges against him was an intentional device to tence should he be convicted.

gain a tactical advantage. Ferdinand thus complains that his right to a speedy trial and to due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated.

Though not separately analyzed in Ferdinand's brief, Ferdinand's point relied on implicates two entirely different Constitutional principles-the Sixth Amendment right to a speedy trial, and the Fifth Amendment due process rights which may be impaired by pre-indictment delay. The analysis to determine whether these rights have been violated is different, requiring their separate discussion.

### Sixth Amendment Right to a Speedy Trial

■ "A defendant's right to a speedy trial arises under the Sixth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment." *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 910–11 (Mo. banc 2010) (citing *Klopfer v. North Carolina*, 386 U.S. 213, 222, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" *Dillard v. State*, 931 S.W.2d 157, 161 (Mo.App. W.D. 1996). " '[T]he protections of the speedy trial provisions attach when there is a 'formal indictment or information' or when 'actual restraints [are] imposed by arrest and holding to answer a criminal charge.' " *Garcia*, 316 S.W.3d at 911 (quoting *Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975)). "At this point, the defendant has become an 'accused' and hence is entitled to Sixth

Amendment protection." *Dillard*, 931 S.W.2d at 161.

■ "In deciding whether a defendant has been denied his constitutionally-guaranteed right to a speedy trial, Missouri courts have adopted the four-prong balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)." *State v. Buchli*, 152 S.W.3d 289, 307 (Mo.App. W.D.2004). " 'The factors include the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' " *Id.* (*quoting State v. Owsley*, 959 S.W.2d 789, 793 (Mo. banc 1997)). "The length of the delay is a "triggering mechanism" because until there is a "delay [that] is presumptively prejudicial," there is no need to discuss the other factors that are part of the balancing process." *Garcia*, 316 S.W.3d at 911. "The test is obviously not designed to supply simple, automatic answers to complex questions, but rather, it serves as a framework for 'a difficult and sensitive balancing process.' Thus, the right necessarily depends upon the facts and circumstances of each case." *State v. Black*, 587 S.W.2d 865, 869 (Mo.App. E.D. 1979) (internal citation omitted).

### Length of Delay

■ The first factor is the length of delay. At all points in the proceedings below, Ferdinand argued that the length of delay at issue in this case was nineteen months.[7] On appeal, Ferdinand now claims that the length of delay should be calculated from the time of arrest in 1993 through the date of his trial in 2011, a period of approximately seventeen years.[8] We disagree.

---

7. See footnote 9, *infra.*

8. The transcript reflects that Ferdinand argued on the morning of trial when renewing his motion to dismiss for violation of his right

to a speedy trial that "as we discussed earlier, the length of delay in this case was nineteen months." The State responded that it interpreted Ferdinand's argument as now "boot-

As noted, the Sixth Amendment right to a speedy trial does not begin to run until a defendant is arrested or an information or indictment is filed. *Dillard*, 931 S.W.2d at 161. The law is well settled that "the period between the voluntary dismissal of ... charges and their re-filing does not count in determining Sixth Amendment speedy trial violations." *Buchli*, 152 S.W.3d at 308 (citing *State v. Anderson*, 687 S.W.2d 643, 647 (Mo.App. W.D.1985); *United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982)).

Ferdinand cites no authority to support his argument that the periods of time between the First and Second Filings, and the Second and Third Filings, *when no indictment against him was pending*, should be included in calculating the length of delay. Ferdinand does rely heavily (but mistakenly) on *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) to suggest that the time between indictments should be included in calculating delay. *Klopfer* is easily distinguishable. In *Klopfer*, the United States Supreme Court condemned the delay which resulted from "an unusual North Carolina criminal procedural device known as the 'nolle prosequi with leave.'" *Id.* at 214, 87 S.Ct. 988. Under North Carolina law, a nolle prosequi discharges the defendant but does not discharge the indictment or dismiss the charges. *Id.* Instead, the charges remain pending such that "the

case may be restored to the trial docket when ordered by the judge upon the solicitor's application." *Id.* With a nolle prosequi *with leave* "the consent required to reinstate the prosecution in the future is implied in the order 'and the solicitor (without further order) may have the case restored at trial.'" *Id.* (citation omitted). "The 'nolle prosequi with leave' was, in effect, a general continuance." *Black*, 587 S.W.2d at 874 n. 7. "The charge remained pending and effective and, thus, continued the state's public accusation without interruption." *Id.*

■ In contrast to North Carolina, under Missouri law, a nolle prosequi is a prosecutor's formal entry on the record indicating that a pending charge will no longer be prosecuted, resulting in a dismissal without prejudice unless jeopardy has attached to bar subsequent prosecution. *Buchli*, 152 S.W.3d at 307. Here, it is undisputed that the charges against Ferdinand did not remain pending between the First and Second Filings, and between the Second and Third Filings.

■ Though we reject Ferdinand's contention that the length of delay he experienced was seventeen years, we acknowledge that the State concedes that Ferdinand was subject to indictment for a collective period of twenty-four months,[9] a time period which the State

---

strap[ping] ... the 17 years that have passed" into his claim of a speedy trial violation. Therefore, we will afford Ferdinand the benefit of the doubt that his present argument that the total delay was seventeen years was raised with, and addressed by, the trial court.

9. Ferdinand was arrested shortly after March 18, 1993 and indicted by the First Filing on August 19, 1993, which was dismissed on March 28, 1994. The Second Filing was on April 11, 1994 and was dismissed on August 1, 1994. The Third Filing was on May 28, 2010 and was tried on February 14, 2011.

Ferdinand filed continuance requests in connection with the First Filing, and a motion for a change of judge in connection with the Third Filing. Any "delays" resulting from these actions should be disregarded in calculating the total delay. *Buchli*, 152 S.W.3d at 307–08 (holding that delay attributable to the defendant's continuances, motions or other action must be subtracted from the total delay). However, it is unclear from the record the extent to which the total delay is attributable to Ferdinand's actions. This lack of clarity is immaterial, however. At trial the State did not contest Ferdinand's contention that

also concedes is presumptively prejudicial under Missouri law. *See State v. Woodworth,* 941 S.W.2d 679, 693–94 (Mo.App. W.D.1997) (holding that eight months or longer is presumptively prejudicial and mandates examination of the other three factors of the balancing test). We turn our attention therefore to the remaining three factors to determine whether the trial court abused its discretion in denying Ferdinand's motion to dismiss for violation of his Sixth Amendment right to a speedy trial.

### The reason for the delay

The second factor is the reason for the delay. We are to determine "whether the trial court could have reasonably decided the delay was or was not justified." *State v. Newman,* 256 S.W.3d 210, 214 (Mo.App. W.D.2008). " 'Different weight is given to different justifications.' " *Id.* "A deliberate attempt by the [S]tate to delay the trial is weighted heavily against the government, while '[a] more neutral reason ... should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.' " *Garcia,* 316 S.W.3d at 911 *(quoting Barker,* 407 U.S. at 531, 92 S.Ct. 2182). " 'Finally, a valid reason, such as a missing witness, should serve to justify the delay.' " *Newman,* 256 S.W.3d at 214 (citation omitted).

Ferdinand argues that the State's delay awaiting favorable DNA evidence was intended to gain tactical advantage and should be weighed heavily against the State. It is undisputed that the First Filing was dismissed because DNA test results had not been received, that the Second Filing was dismissed because DNA test results were inconclusive, and that the Third Filing followed the use of new DNA testing technology to identify Ferdinand.

The trial court found "that waiting for DNA evidence is a legitimate reason for dismissing a case and re-filing it." We agree. This case is very similar to *State v. Davis,* 903 S.W.2d 930, 936 (Mo.App. W.D. 1995), where delay was a result of the evolving technology of DNA testing on which the State was basing its case. Nothing in the record in that case indicated bad faith or negligence on the part of the State. *Id.* Similarly, Ferdinand points to nothing in this record suggesting that the State acted in bad faith or negligently in awaiting conclusive DNA test results.

Though the State's explanation for delay is reasonable, "it is the ultimate duty of the State to bring the accused to trial. State caused delay, even where there is no deliberate attempt to delay the trial or hamper the defense, weighs against the State ... but not heavily." *Id.* (internal citations omitted).

We temper this conclusion by the fact that Ferdinand also contributed to the total delay. In the First Filing, Ferdinand requested two or three continuances related in part to his desire to obtain the DNA evidence. After the Third Filing, some delay resulted from Ferdinand's motion for a change of judge. "[W]here a defendant has contributed to the delay by requesting, and being granted, continuances, he cannot later successfully allege the denial of his right to a speedy trial." *State v. Greenlee,* 327 S.W.3d 602, 612 (Mo.App.

the total delay was nineteen months. Here, the State concedes the total delay is twenty-four months. Both periods of delay are presumptively prejudicial. The five month delay between Ferdinand's initial arrest and the First Filing explains the discrepancy between Ferdinand's allegation below that the delay was nineteen months, and the State's assertion here that the delay was twenty-four months.

E.D.2010). " 'Delays attributable to the defendant weigh heavily against the defendant.' " *Id.* (citation omitted).

### The defendant's assertion of his right to speedy trial

 The third factor is Ferdinand's assertion of the right to speedy trial.

[T]he timely assertion of the right to speedy trial is a factor in determining whether the speedy trial right has been violated. In this context, the right is again different from other constitutional rights in that a delay may or may not work to the defendant's benefit. There is no fixed requirement for when the right must be asserted; rather, the circumstances surrounding the assertion or failure thereof comprise the factor to be weighed. Waiting several months to assert the right to a speedy trial has been found to weigh against a defendant. Although [a] defendant has no duty to bring himself to trial, ... failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Newman,* 256 S.W.3d at 216 (internal citations and quote marks omitted). Ferdinand argues that his assertion of his right to a speedy trial in 1994 should be weighed in his favor, and effectively treated as a continuing assertion. We disagree.

 Ferdinand did not assert his right to a speedy trial at anytime during the pendency of the First Filing. Ferdinand did assert the right to speedy trial in 1994 shortly after the Second Filing. However, that assertion was specific to the Second Filing and did not relate back to the First Filing, or carry forward to the Third Filing. *Duncan v. State,* 864 S.W.2d 431, 433 (Mo.App. E.D.1993) (holding speedy trial request is specific to a particular case, and does not carry forward when State re-files following nolle prosequi of first case).

Thus, when the Second Filing was dismissed, the request for speedy trial became moot. *Id.*

Following the Third Filing, Ferdinand waited almost seven months before filing another request for speedy trial. "[T]he delay in bringing appellant to trial, while chargeable to the State, is attenuated by appellant's delay in asserting his right to a speedy trial." *State v. Bohannon,* 793 S.W.2d 497, 504 (Mo.App. S.D.1990). "This factor is weighed neither for nor against either party." *Davis,* 903 S.W.2d at 937 (holding that delay chargeable to State is attenuated by defendant's eleven month delay in asserting his right to speedy trial).

Moreover, Ferdinand reasserted his speedy trial right in connection with the Third Filing four months *after* he agreed to a trial setting of February 14, 2011. His case was, in fact, tried on this agreed date. *State v. Powers,* 612 S.W.2d 8, 12 (Mo.App. S.D.1980) (holding that delay from arraignment to trial date should not be weighed against State when the trial date is one agreed to by the defendant).

### Prejudice to the defendant

 The fourth factor is prejudice to Ferdinand. "The final and most important factor to be considered in the balancing test is whether the delay actually prejudiced the defendant." *Woodworth,* 941 S.W.2d at 694. In making the determination of prejudice, "we must consider: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of anxiety and concern of the accused; and (3) limitation of the possible impairment of the defense." *Id.* " 'The last of the three components is considered most vital to the analysis' " *Newman,* 256 S.W.3d at 216–17 (citation omitted). "Claims of prejudice must be actual or apparent on the record, or by reasonable inference, while specula-

tive or possible prejudice is not sufficient." *State v. Greenlee,* 327 S.W.3d 602, 612–13 (Mo.App. E.D.2010). The burden to present evidence of actual prejudice is on the defendant and the failure to do so weighs heavily in favor of the State. *Id.*; *Newman,* 256 S.W.3d at 217; *Scott,* 348 S.W.3d at 798.

Ferdinand argues that the delay in his prosecution impaired his defense because Collier could not be located, Jackie would have known more about Collier's whereabouts in 1993 or 1994, and he lost the opportunity for concurrent sentencing at an earlier date. These assertions relate solely to the third of the aforesaid components.[10]

The record demonstrates no actual impairment of Ferdinand's defense. At the hearing on his motions, Ferdinand argued that Collier could not be found. It is true that our courts have held that "[i]f witnesses disappear during a delay, the prejudice is obvious." *Garcia,* 316 S.W.3d at 912. Here, however, the trial court did not accept Ferdinand's claim that Collier could not be found. Instead, the trial court concluded that the search for Collier was neither diligent nor complete. The trial court's conclusion was based on McClinton's testimony that her efforts were limited to talking to Jackie on two occasions and a truncated Case.net search. Ferdinand argued that it is reasonable to conclude that Jackie would have been better able to assist in locating Collier in 1993 or 1994 given Collier's apparent claim that he was the father of Jackie's baby. This argument is merely speculative, however,

as no evidence about the extent of contact between Jackie and Collier in 1993 or 1994 was presented to the trial court.

In any event, the trial court found that Collier's absence did not demonstrate prejudice. Though Ferdinand loosely contended that Collier *might* have been able to verify whether Jackie and the Victim spent the night at his house on March 18, 1993, and *might* have been able to verify that the Victim stole money from him prompting her to lie, the trial court aptly observed that, "I don't know what the lie would have been. I don't know whether the lie would have been that there was sexual activity or the lie would have been whether it was forced activity; I don't know. But, again, I do think that's all important, in the way I read the case authority on your issues of prejudice." Ferdinand's general assertions about what Collier's testimony *might* have been were insufficient to establish that Collier's absence as a witness at trial was prejudicial to his defense. *See State v. Williams,* 120 S.W.3d 294, 300 (Mo.App. W.D.2003) ("Prejudice to the defendant must be actual, not speculative, and apparent or at least reasonably inferable from the record."); *Greenlee,* 327 S.W.3d at 613 ("While [defendant] makes general allegations of prejudice, he fails to meet his burden of demonstrating that actual, not speculative or possible, prejudice occurred due to the delay in his trial.").

This conclusion is particularly appropriate in light of the fact that Ferdinand stipulated at trial that on March 18, 1993, he had sexual intercourse with the Victim

---

10. Ferdinand has been incarcerated since 1994 on an unrelated charge and conviction. The various filings against him would not, therefore, have been responsible for oppressive pretrial incarceration. *Bohannon,* 793 S.W.2d at 504. Further, "[a]nxiety and concern exist in every criminal case, but that alone does not establish prejudice where the

accused neither asserts nor shows that the delay weighed particularly heavy on him in specific instances." *Id.* Ferdinand made no showing or even argument regarding this component. Moreover, "the gravity of any 'public obloquy' to which an accused might be subjected is lessened where he had already been convicted of other crimes." *Id.*

without her consent by use of forcible compulsion. Given this factual admission, any prospect of prejudice based on the fact that Collier *might* have been able to testify that the Victim had a motivation to lie is negated.

█ Ferdinand further claimed that he was prejudiced by the delay because it deprived him of the opportunity to receive at the earliest possible date sentencing concurrent to the time he had been serving since 1994 on an unrelated conviction. Ferdinand relies on *State v. Holmes*, 643 S.W.2d 282, 287 (Mo.App. W.D.1982) to support his claim of prejudice. *Holmes* does suggest that a missed opportunity for concurrent sentencing can constitute prejudice in the context of a Sixth Amendment claim. *Id.* However, *Holmes* is distinguishable from Ferdinand's case. In *Holmes*, the defendant was unaware of a pending Clay County arrest warrant and complaint for a 1979 robbery when he was tried, convicted, and sentenced on a charge of manslaughter in Jackson County. *Id.* at 284. The defendant was sent to prison in 1980. *Id.* In June 1981, while the defendant was residing at an honor center, he was arrested on the Clay County charge. *Id.* The defendant thus had no opportunity to enter a guilty plea on the Clay County charge in order to obtain a sentence on that charge running concurrent with his Jackson County conviction. In contrast, Ferdinand was well aware of the First Filing (and perhaps even the Second Filing) at the time of the unrelated 1992 charge for which he was convicted in 1994. We agree with the trial court's assessment that Ferdinand retained the ability to negate any prejudice associated with denied or delayed concurrent sentencing by pleading guilty in response to either the First or Second Filing.

After applying the *Barker* factors, we find that the total delay of twenty-four months was presumptively prejudicial, but that the presumption of prejudice has been overcome. The reason for delay weighs only slightly against the State and is attenuated by Ferdinand's contribution to the total delay. The delayed assertion of Ferdinand's right to a speedy trial after the Third Filing does not assist Ferdinand, particularly as the right was asserted *after* Ferdinand agreed to a trial setting. Finally, the record does not support a conclusion that Ferdinand was prejudiced by the delay. The trial court did not abuse its discretion in denying Ferdinand's motion to dismiss for violation of his Sixth Amendment right to a speedy trial.

### Fifth Amendment Right to Due Process

█ "The Sixth Amendment does not apply to pre-indictment delay." *State v. Clark*, 859 S.W.2d 782, 787 (Mo.App. E.D.1993). Rather, the Fifth Amendment's due process clause may be a basis for dismissal because of pre-arrest or pre-charging delay.[11] *State v. Griffin*, 848 S.W.2d 464, 467 (Mo. banc 1993). "Whether a pre-arrest delay is undue is not determined by application of the test set out in *Barker v. Wingo, supra*, however." *Dillard*, 931 S.W.2d at 163. To establish a Fifth Amendment due process violation due to the tardy commencement of proceedings, the defense must show *both* that (1) the State intentionally delayed the filing of charges in order to obtain a tactical advantage over the accused, and (2) the delay caused substantial prejudice to the defendant's right to a fair trial in specific ways beyond simple claims that memories have faded, witnesses are unavailable, and evidence is lost. *Id.*; *State v. Kleine*, 330

---

11. The applicable clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty or property without due process of law." U.S. Const. amend. V.

S.W.3d 805 (Mo.App. S.D.2011) (thirty-two year delay and no due process violation); *State v. Morris,* 285 S.W.3d 407 (Mo.App. E.D.2009); *Buchli,* 152 S.W.3d at 308. "[I]t is not the length of delay that is dispositive, but whether the accused suffered substantial prejudice due to the delay." *State v. Bell,* 66 S.W.3d 157, 161–62 (Mo.App. S.D.2001).

> The prejudice shown must be more than the real possibility of prejudice inherent in any extended delay; that memories dim, witnesses will become inaccessible, and evidence will be lost. A defendant must do more than speculate; he must indicate the nature of possible evidence which could be adduced.

*Buchli,* 152 S.W.3d at 308 (citations and quotation marks omitted).

 The substantial prejudice standard associated with proof of violation of the Fifth Amendment due process clause is more stringent than the demonstration of prejudice required to substantiate a Sixth Amendment speedy trial violation. *Black,* 587 S.W.2d at 871 n. 4. "Thus, if [a defendant] fails to meet the speedy trial standard of the Sixth Amendment, then a fortiori, he would be unable to meet the more stringent requirements under the Due Process Clause." *Id.*; *See also State v. Allen,* 641 S.W.2d 471, 475 (Mo.App. E.D.1982) (*citing United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). We have already determined in analyzing Ferdinand's speedy trial claim that the Sixth Amendment prejudice factor weighed against Ferdinand, necessitating the conclusion that Ferdinand cannot satisfy the more stringent prejudice standard required to demonstrate a Fifth Amendment due process violation.

Our conclusion is consistent with the result reached in *Dillard,* a case with strikingly similar facts. 931 S.W.2d at 157. Dillard asserted a due process viola-

tion and claimed he was prejudiced because he lost track of a potential defense witness during the twenty months between complaint and arrest. *Id.* at 163. Dillard failed to develop what the witnesses' testimony would have been or that the witness would have been willing to testify had trial occurred sooner. *Id.* We held that Dillard's claim was too speculative to constitute the substantial prejudice required to demonstrate a Fifth Amendment violation. *Id.* Similarly, Ferdinand merely speculated about what Collier's testimony might have been, and failed to establish that Collier would have testified even had he been located. Ferdinand's claim is merely speculative and does not qualify as substantial prejudice to demonstrate a Fifth Amendment due process violation.

The defendant in *Dillard* also made the argument that he missed an opportunity for concurrent sentencing. 931 S.W.2d at 163. We acknowledged that *Holmes* suggests that a missed opportunity for concurrent sentencing can be an element of prejudice in the context of a Sixth Amendment claim, but noted that "[v]arious courts have expressed doubt, however, that the loss of possible sentencing options would constitute the *substantial actual prejudice* to the defendant's right to a *fair trial* needed to support a due process claim under the *Fifth* Amendment." *Id.* (emphasis in original).

Even if Ferdinand could overcome the hurdle of establishing the substantial actual prejudice required to support a Fifth Amendment due process violation, Ferdinand has failed to make any showing regarding the other required prong-that the State delayed his indictment solely to gain a tactical advantage. *See id.* at 164 (holding defendant failed to offer any evidence that delay was intended to secure a tactical advantage or to prevent service of potentially concurrent sentences). Here, the

delay was occasioned by the State's reasonable belief that conclusive DNA evidence was essential to ensuring the ability not simply to charge Ferdinand, but also to convict him beyond a reasonable doubt. "[P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *U.S. v. Lovasco,* 431 U.S. 783, 791, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

> [I]nvestigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused' ... precisely because investigative delay is not so one-sided. Rather than deviation from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed.' This the Due Process Clause does not require.

*Id.* at 795–96, 97 S.Ct. 2044 (internal citations omitted).

As Ferdinand failed to establish both prongs required to demonstrate that his Fifth Amendment due process rights were violated, the trial court did not abuse its discretion in denying Ferdinand's motion to dismiss on due process grounds.

Point is denied.

### Conclusion

The trial court did not abuse its discretion in denying Ferdinand's motion to dismiss for violation of his right to a speedy trial or in denying Ferdinand's motion to dismiss for violation of his due process rights. The trial court's judgment of conviction and sentencing is affirmed.

All concur.